Minshall, J.
These questions arise upon the case: 1. Did the agreement to transfer give to the plaintiffs any equitable interest in the stock? 2. If so, was their equity superior in merit to that of the company? 3. Did the assignment of the stock made January 7, 1892, with knowledge of the claim of the company, give them a superior right to the latter, though the equities were equal? 4. Can the company, under the circumstances disclosed by the answer, be heard to make a claim to the stock against an innocent third person?
1. At the time the parties became sureties for Co-burn and Dulaney, Coburn agreed that the stock he then held should be transferred as security to them against loss; and this induced them to become sure *593 ties on the note. The promise was a written one as follows: “The collateral described by Mr. Dulaney will be turned over to Mr. Michner at any time desired — this week. (Signed) John A. Coburn.” We do not, however, attach any importance to the fact that it was in writing, beyond the fact that it indicates with certainty the agreement of the parties. It is not necessary, as we think, to determine whether this agreement constituted a present pledge of the stock. Strictly speaking, stock being of an incorporeal nature, is not capable of being pledged, as there cannot be a delivery of intangible property. It may be, and frequently is, hypothecated, which is a pledge in a secondary sense. An hypothecation is defined as a right which a creditor has over a thing belonging to another, and which consists in a power to couse it to be sold, in order to be paid his claim out of the proceeds. Bouvier Law Die. “Hypothecation.” Whatever the agreement between the parties should, in legal propriety, be termed, it was such an agreeihent. as could have been specifically enforced, because designed to afford security against liability as sureties assumed on faith of the promise, and this gave to them an equity in the stock, that would avail against all persons with notice. Gibler v. Trimble, 14 Ohio, 323.
2. The question then arises, was this equity superior to that of the company based on its agreement with Coburn for a reassignment of the stock? It is the undoubted rule that as between equities that are equal in merit, the one that is prior in time is prior in right. So that before the priorities of competing equities can be determined, their respective merits must be considered, and if it be found that the latter equity is superior in this regard, it must be awarded priority in right. Hume v. Dixon, 37 Ohio St., 66; *594 Campbell v. Sidwell, 61 Id., 179. In Hume v. Dixon, supra, the learned judge in delivering the opinion, adopting what is said by the vice-chancellor in Rice v.Rice, 2 Drew., 73, says: “The true meaning of this rule (that prior in time is prior in right) is that time, as a ground of equity, is to be last resorted to as between equities, and that a court of equity will not prefer one to another, on the ground of time, until it has been found, by an examination, that there is no other sufficient ground of preference, and that if one has on other grounds a better equity than the other, time is immaterial. In examining the relative merits of opposing equities, no technical rule, nor one of partial application, should be applied; but the same broad principle of right and justice, peculiar to courts of equity, should guide the chancellor.” The contest in this case was between one who had a vendor’s lien and one who subsequently purchased and paid for the land, but who, by reason of a defect in the execution of the deed, held simply an equitable title. Prom this case it appears the fact, that one has placed it in the power of another to deal with his property as his own is inferior in right to one who has been misled thereby. Speaking of the facts, the judge says: “Here Dixon voluntarily placed in the hands of Kirkpatrick the legal title. He clothed him with the power of sale. He was in a degree accessory to the act of selling to Mrs. Hume. Instead of taking a mortgage and placing his lien on record, so that all might know of it, it was kept secret.”
Whilst every case must be decided upon its own peculiar facts, and it will be difficult to give a more definite rule than is given in Hume v. Dixon, adopting the principle of that case and the solution of this one is not difficult. Por purposes of its own, and which we need not here comment upon, it placed the *595 legal title to the stock in question in Coburn. He held a certificate to the effect that he owned it. On the faith of what this certificate purported and on the promise to transfer it in a week as collateral security, the plaintiffs accommodated the principals on the note by becoming their sureties. The principals have not fully indemnified them. Unless they are permitted to avail themselves of this collateral they must suffer a loss. To permit, under the circumstances, this secret equity, if it may properly be termed one, to be asserted as prior in right to that of the plaintiffs, tends to shock the natural sense of justice. One who, for his own purposes, places the legal title to his property in another, must take the hazard of any loss that may result from his dealing with it as his own, so far as innocent third persons are concerned. On principles of natural justice his equity is inferior to that of any person who acquires in good faith any title to the property.
3. It is now generally conceded that the assignment of a certificate of stock with power of attorney to have it transferred on the books of the company, gives to the assignee the status of a legal owner of the stock. It conforms to the practice and general understanding of the commercial world. Pomeroy Eq., sec. 710; Railway Co. v. Bank, 56 Ohio St., 351, 383. Hence, on January 7, 1892, when the stock was assigned by Coburn to the plaintiffs and delivered to them, they became clothed with what is regarded as the legal title, or, in other words, held as against the company a title by estoppel to the stock superior to any right of the company to set up in its own favor a secret equity. Cook on Stockholder, sec. 416. It is true that at this time they had knowledge of the claim of the company, but had no such knowledge at the time the agreement was made for the transfer. *596 And here it will be observed that the claim of the company is not that of an innocent purchaser for value. Its claim is that of a mere equity for a reconveyance, prior in time, to the equity of the plaintiffs. The contest is simply between equities. In such cases the settled doctrine is stated by Pomeroy to be, “That if a second or other subsequent holder, who would otherwise be postponed to the earlier ones, obtains the legal estate, or acquires the test right to call for the legal estate, he thereby secures an advantage which entitles him to priority. It is absolutely essential, however, that he should have acquired his equitable interest without any notice of the prior claims.” Pomeroy Eq., Sec. 727; also Sec. 729. Adams Eq., 161,162. The language of the last author is: “It has been already stated that in order to avoid the postponement of the latter equity, freedom from notice is indispensable. The notice, however, here referred to, is a notice existing at the acquirement of the equity, not a notice at the completion of the right. The latter purchaser or encumbrancer, on payment of his money, becomes an honest claimant in equity, and is entitled, if he can, to protect his claim. But he is not bound to look for protection until he has ascertained that danger exists; and his right to obtain it will continue, notwithstanding the institution of a suit to settle the priorities of the conflicting claimants.” The plaintiffs seem to be clearly within the rule here stated. They had no knowledge of the company’s claim when they acquired their equity, and had a right to protect it by taking an assignment of the stock for that purpose, which they did on January 7, 1892, though at that time they had knowledge of thecompany’sclaim. This gives to them an unquestioned priority over the company, and the right to a sale of the stock for the *597 satisfaction of their claim. Gibler v. Trimble, supra. This case clearly supports the doctrine that where the equity is acquired without notice, the owner may protect himself against an earlier equity by acquiring the legal title, though, at the time of so doing, he had notice of the earlier equity.
4. We are not disposed to go into the fourth question, further than to observe that the transaction by which the stock was issued to Coburn reflects most unfavorably upon the merits of the company’s equity, if one exists which could be protected under any circumstances in a court of equity. The transaction was a fraud upon the law and contravened the declared policy of the state, if Coburn was intended to be a nominal, and not the real owner in fact, of the stock placed in his name. Cases to the effect that one may be made eligible as a director by simply placing shares in his name, which he does not own, are not in point here. In this case the purpose was to make one a director, who was a resident of the state, and, without his being such resident, the increase of stock — the purpose desired — could not have been obtained. It is hardly to be allowed that a court of equity would, under such circumstances, assist a company in recovering its stock against one who had acquired an interest in it, acting in good faith and without knowledge of the facts.

Affirmed.